Good morning. May it please the Court. My name is Celia Rhodes with the Federal Public Defender's Office, and I represent Mr. London. As this Court knows, this case presents two separate issues, one procedural and one substantive. With the Court's permission, I'd like to begin with that procedural gatekeeping issue about timeliness and then move on to the substantive question about the force clause. Now, to begin with, I don't think there's any real dispute about the underlying constitutional violation here. Mr. London received a mandated enhanced sentence fixed by the precise language invalidated in Johnson, and the government doesn't seem to dispute that Mr. London's sentence was unconstitutional in light of that decision. So the only real dispute in this case is whether Mr. London should be permitted to proceed with his claim or whether he's time-barred by 2255 statute of limitations. Now, as our briefs demonstrate, the government and I disagree about the meaning of assert under F-3. But setting that issue aside for the moment, I think this is an easy case under either of our interpretations. Even under the government's own rubric, Mr. London's claim was timely, and that's because the Supreme Court in Stringer v. Black already answered the question of whether a new rule is limited to the precise statute at issue in the case announcing the rule. Why is it not just about every circuit, I guess, except the seventh gone the other way? I think that's a really good question. And with great respect to those circuits, AEDPA is a complicated statute. I think that this is a completely new argument that the government has put forward, so this is the first time we're seeing it. But I think it really boils down to three separate reasons why they're wrong. The first, and I can get back to this because I think it's really important, is that they all misrepresent, they misinterpret the plain text of F-3, the meaning of assert. They're requiring a merits analysis at initial timekeeping stage where no merits analysis is required. I think they all also, and this is what I was getting at. It seems to me that the term assert is associated with the merits of the right that they asserted. So I actually think... If you assert a right that turns out to be vile, then clearly you come within the statute of limitations, right? Yes. Well, I think that the... And the only way you know whether you've asserted a right. So if you assert, the statute of limitations is not really decided until you decide the merits of the right you're asserting. So the term assert really hardly has any meaning disassociated with the merits of the case. Well, in my view, unfortunately, I think that would mean that's collapsing the merits into the statute of limitations. And we know from AEDPA that these are two separate questions. Well, I don't know that. So I think that the reason we know that is because this is... And what we know about statute of limitations is there's sort of like a stopwatch where Johnson begins the stopwatch ticking. How do you know when the statute of limitations is wrong until you define the right? So I think that that's where Morgan comes in. I think that what is a little misleading about this case is that it seems like no analysis is happening under F3. But that's because the Supreme Court in Welch already answered the question that's usually hard here. So Morgan says you import Teague analysis for the very limited question of whether the limitations period has re-begun. So you look at the case that the person is invoking, that they're asserting, and you say, did that announce a new rule? And up until now, the analysis has stopped there because the dictionary version... If it announces a new rule, then you have asserted a right. Is that right? I think that the question of whether the limitations period begins is Morgan. That is, has that case announced a new rule that's retroactive? Welch answered that question. We know that the clock started ticking. To assert it. I don't see that asserting really is determinative in the case. I actually... I see what all the fuss is about about asserting. I agree. I think that it's as simple as saying that he invoked it, that his petition calls upon the right, that he says I'm entitled to relief because of this case. Now, the court... If he's not entitled to the case under this particular scenario, then the statute has indeed run or not run. I mean, it's... So I think, David, what you're getting at is why are we talking about the merits in F3 if we're going to talk about the merits eventually anyway? But I think... You think the merits are uncontested, so... I do. In this case, if it were enmeshed, you'd be okay. Exactly. And I think that that's the sort of subtle thing that's happening here is that normally we would just say the statute of limitations has restarted. Has he asserted his claim? Has he invoked the right? Has he just said this case entitles me to relief? And then we'd move on and say, okay, well, does it entitle him to relief? This is a weird situation where the government's not saying it doesn't entitle him to relief. What they're doing is sort of pushing this heavy merits analysis up into F3 where it doesn't belong. And I think that the most... The problem, I mentioned the other circuit cases. My bigger concern is not what they've done but our decision in United States versus Williams. Because it seems to me everything you're saying there, I mean, there we ultimately held in another case that Johnson did invalidate 924C. It's at the Supreme Court now, but that's what our court held. So why shouldn't Williams, under your reasoning, have come out allowing the petition to be timely considered? Well, I think Williams itself hinged its ruling on the fact that this question was still foreclosed in the circuit. So there was direct case law in the circuit saying that Johnson doesn't entitle you to relief. And Williams itself said for the motion to even be considered, first we have to invalidate the statute. Davis was invalidated later. Now, I think that that's sort of interesting reasoning. But regardless, under Williams' own logic, I think that the premise that they relied on no longer exists. But beyond that, I think it's important to remember, 924C is a completely different statute. And it's very, very different from the Mandatory Guidelines, Residual Clause, and ACCA. It not only has different wording, but it has completely different applications. So it doesn't look at past predicates. It looks at contemporaneous conduct. And that's why this complex circuit split has emerged over Johnson's application to 924C. So regardless of how I would have come out on Williams, I think that there's a spectrum where 924C is clearly further afield from Johnson. So I definitely don't think that Williams binds this court on this question. And this court has differentiated between Mandatory Guidelines claims and 924C claims. Obviously, Williams denied a COA in that case. In this case, a COA was granted. And Judge Inglehart, I know that you've granted a COA on this question in the past. So this court already has at least differentiated on that level. Under your theory in Williams, the petitioner was relying on the right in Johnson to say 924C is invalid. Well, I think it's important not to say rely on because that's a sort of higher threshold than the assert requirement, which is sort of a different issue. They were asserting Johnson, however you want to put it, to say 924C is invalid. I mean, it's certainly inconsistent with the Seventh Circuit's approach, I think. Yes, I think that it puts a limiting principle potentially on this court's analysis here. But I definitely don't think it forecloses the question. And, again, it really was hinged on the fact that 924C, that question, was squarely foreclosed. And so what they were saying is that we haven't been told that our law is incorrect yet. We haven't decided that question. And Williams actually said, you know, come back the moment that this question is no longer foreclosed. And, of course, Davis did that. So I'm not sure how that panel would come out now. I think also to the extent, I mean, because I don't think it's binding, I think the question becomes is its logic persuasive that you want to import it here? And I think it's important to remember that that was decided on pro se briefing at the COA stage. So there wasn't full adversarial treatment of that question. And I think that there's a good argument that, especially considering the circuit split that emerged afterwards over that precise question, that a COA probably should have been granted in that case, that reasonable jurists could disagree. But I want to get back to the three reasons why I think that those circuit decisions are incorrect. Because, Judge Costa, I think that you sort of hinted at one of them. I think that they misinterpret the meaning of assert. I think that just means invoke and nothing more. I think that they necessarily assume that Johnson's rule is limited to ACTA, and there's no support for that idea in Teague New Rule jurisprudence. But, Judge Costa, one thing that you sort of hinted at when you said the word rely on, they're importing standards from other areas of AEDPA. And I think that that's the most subtle mistake that they're making, but I also think it's the most dangerous to AEDPA's statutory scheme. So the most simple ones that they're doing is, for example, Rabon and Brown are citing Tyler B. Cain. That interprets the word made for the purpose of, in the successive context, whether the Supreme Court has made a right retroactive. And the Supreme Court understandably has said that means held. We have to hold that it's retroactive. That doesn't apply here. But there's CF citing to Cain and saying, okay, well, that means recognized means held. They're also relying on that rely on standard, where they're saying that you have to show that your claim, at an initial phase, that your claim relies on. I see that as sort of hemming in this Court's analysis of what assert means, because relies on is a higher standard that's only imposed on successive petitioners. So I think, necessarily, asserts has to mean something less than relies on, regardless of whether this Court imports some sort of prima facie case analysis. It can't be frivolous. It can't be so obvious that they're not actually, in good faith, asserting the right. I think relies on will hem the Court's in. But last, and I think that this is probably the worst mistake, is that Brown, Greer, and Green all cite Williams v. Taylor, which is a case interpreting 2254 standard for state petitioners. So Congress erected this thick firewall in between federal petitioners and state petitioners. State petitioners are held to a much higher standard. And that's not at the initial timeliness phase, because they're subject to the same statute of limitations. It's at the merits phase. They have to show that the right that they're asserting not only has been newly recognized, but that it's clearly established. And the reason for that is that we don't want to pull the rug out from understate courts, who in good faith are making constitutional determinations at the time that they decide the petitioner's claim, when their conviction becomes final. And this comes from Teague case law and interest in comedy, the mandates of federalism. Congress very specifically did not apply that standard to federal petitioners, and for good reason. The finality interests are less, and the comedy interests are nonexistent. And so what they did, and this started with Brown, is Brown said that you have to show that this right is clearly established. And not only do you have to show that at the merits stage, which Congress expressly did not do, but you have to show it at the timeliness stage. So they're importing the exceptionally high bar for state petitioners, and they're not importing it onto the merits. They're importing it into the timeliness stage. So all of the sudden, initial federal petitioners are being subjected to a higher merit standard at the timeliness stage than they would have at the actual merit stage. And I think that that threatens the integrity of this statutory scheme. It's completely confusing the analysis. Now, I want to get back to the idea of asserting, because I just want to make sure we're defining the term, because Congress used this word very specifically. And the definition of that is to invoke, right? So I think that this Court very easily could find this claim timely and yet not meritorious. So as long as he's invoked the right, as long as he's claimed relief under it, it doesn't matter if this Court ultimately determines that it disagrees with him about the contours. In other words, you said the petitioner loses in any event. Even under the statutory limitations of the merits, he loses in any event. It's true, but at least we haven't held them to a standard for state petitioners, which other circuits have been doing. And at least we're not confusing the timeliness of the merits. Because what the government has basically— That's exactly what you're doing. I don't understand what you're saying. I think that it's important to tease out the assumptions that the government— Right. Right. I think that it's important to tease out the assumption that the government's relying on. So I think the first is that— If he invokes the right, it's timely, you say. Is that correct? Oh, yes, absolutely. If he invokes the right, it's timely, and then we move on to the merits. And the merits are just a straight merits determination. But what the government is saying is that if they can identify any plausible distinction between the petitioner's claim and the exact holding of the Supreme Court in the case announcing the rule, that the person can't assert it. And so what they're basically saying is that if they can identify that plausible distinction, they don't have to win that on the merits. They can just say you're not asserting Johnson. So they can win a question on the merits that they did at the timeliness stage that they wouldn't otherwise win at the merits stage. It might not be your immediate concern, but let's assume, for argument's sake, you win, it's timely, this guideline is vague because it's mandatory, and your client goes back for a resentencing. How would that resentencing work? Would the district court have to take off this enhancement and then be in a mandatory guideline world? Or, because Booker says a mandatory guideline regime is unconstitutional now, or would we just treat it like an advisory range and let the court see if it wants to exercise its discretion? I think that we would treat it as an advisory range. And, of course, that raises the question, well, couldn't the court just go to the one above? But I think that that's true. I mean, that's going to be true regardless. So you would keep the enhancement but as an advisory? Well, I think that the enhancement is invalid. I think that if the district court, even under today's law, went back and analyzed this enhancement, if the court said that the career offender sentencing enhancement applies, that would be incorrect. But under Beckles, if it's an advisory range, it's okay. I mean, for someone who was sentenced in 2000 – I know they've changed the guideline now, but someone who was sentenced in 2010, career offender, when it's an advisory guideline range, there's no Johnson claim. So they would have to vary up, is what I'm saying. If the court said, I'm applying the mandatory guidelines enhancement, that would be incorrect, and we would come to you with a substantive unreasonable challenge in an inappropriate application of the guidelines. But it is true that going back, he probably would be sentenced under the advisory guidelines. I see my time is up. All right. You have time for rebuttal. Thank you, counsel. Mr. McLaren. Good morning. May it please the Court, Ryan McLaren for the United States. I'm joined this morning by my co-counsel, Diane Copes. Our argument this morning boils down really to two parts. First is that the Supreme Court cannot have recognized a right that it hasn't discussed and that one justice of the Supreme Court has repeatedly said is an open question. And second, that a crime that punishes conduct that will foreseeably result in death or great bodily harm to another person, that that crime is a crime of violence. And so I want to turn first to the timeliness issue. There are a couple of points by opposing counsel that I need to respond to. First, opposing counsel says that we don't dispute that there was an underlying constitutional violation. And I would say that COA wasn't granted on that issue. We haven't disputed it because it wasn't asked that we brief that issue. So we brief the timeliness issue because COA was only granted on the timeliness issue. Judge Costa, you asked about the Williams case, and opposing counsel said Williams is somehow distinguishable because there was some binding circuit authority that was relied on in Williams. And I would say that to the extent, again, that this Court wants to reach the merits in this case, that there was some constitutional violation, there is binding authority that would apply to that. There is binding authority from this Court saying that the mandatory guidelines were not subject to vagueness challenges. Those cases weren't part of the briefing in this case, again, because COA wasn't granted on that, but those cases are out there. I thought at least in other circuits, I thought the government had conceded that now a mandatory guideline is unconstitutional, if it's the same language as Johnson, is unconstitutional. And, Judge Costa, and I can provide supplemental briefing on this, but the government's position, the SG's office position has been that if the mandatory guidelines were to go in front of the Supreme Court, that a similar outcome to Beckles would be the result. And so I want to turn to the timeliness issue. I don't want to just repeat what the other circuits. The Supreme Court has not declared that to be a right. That's correct, Judge Scholle. And so I want to turn to the timeliness issue. I don't want to just repeat what the other circuits have said, but I will direct the Court's attention to one of the cases that we cited, the Eighth Circuit's decision in Russo. And so to the extent that opposing counsel's argument is that some of these cases conflate different standards under habeas law, Russo is a case that is directly on point with this. It's a 2255F3 case. The Eighth Circuit said that a petitioner in Mr. London's position would not be able to timely raise a claim. And so that analysis, it's just a 2255F3 case that came to the same conclusion. I also want to direct the Court's attention to Brown. It's the case from the Fourth Circuit. And Brown is noteworthy because in Brown, the defendant attempted to take his case up to the Supreme Court, and the Supreme Court denied cert. In her dissent from the denial of cert, Justice Sotomayor repeated that this was an open question. She said it for the first time in her concurrence in Beckles. She repeats it again in her dissent in Brown, that this exact question of whether Johnson applies to the mandatory guidelines, whether this is a right, is an open question. And so that's significant for two reasons. First, again, because it's Justice Sotomayor again saying this, again saying that it's an open question. If Justice Sotomayor had believed that her concurrence in Beckles, her statement in Beckles, that this was an open question, if she believed that courts were taking that the wrong way, were misinterpreting it, were using it to keep these petitions from going forward in a way that wasn't consistent with what she meant, she certainly could have said that in Brown. She could have said, that's not what I meant when I said that it was an open question. Rather than saying that, she repeated it. She said, again, this is an open question. This is something that this Court, that the Supreme Court, has not addressed. It's also significant because – Demeyer was an open question, and it was a potly contested question that split the Supreme Court 5-4. But they applied the Johnson right in Demeyer to a new statute. And, Judge, that's right, and there are a couple of issues with that. I don't want to get too deep into the weeds with that. But it's significant and it's worth noting, and this is analyzed in the Tenth Circuit case that we cited in the 28-J and the Pullen case, that Demeyer, Johnson, those are statutes, and these are guidelines, and so it's unclear what the Supreme Court would do when presented with a mandatory guidelines case. They're just – they're different things. And so it makes more sense that the Johnson analysis would apply 216B to another statute, to Demeyer. And as I said, this is all analyzed in a way that's more eloquent than I can say in the Pullen case, the Tenth Circuit case that we cited in the 28-J. The defendant argues that its position would actually promote more timely assertion of claims, which is the goal of these statutes, to not let these things linger on, because within a year at Johnson, if you had a Demeyer claim, boy, you better assert that. If you had a claim under the guidelines, boy, you better assert that, whereas now you can sort of linger and wait for these things to be applied in different manners and then still raise it. What's your response to that? That may be a policy benefit to opposing counsel's argument, but just my response to that would be the plain language of 2255F3 says that there has to be something to base this claim on. You can't just assert something and then kind of try to tether it to something that the Supreme Court has said in another context, in a statute context where this is a guideline or something like that. And the courts that have followed the cross case, the Seventh Circuit case, have said this, have criticized the cross case for reading the recognized-by-the-Supreme-Court language out of 2255F3. So to the extent that that policy argument that you repeated, Judge Costa, that is focusing on the assert language, and it reads the recognized-by-the-Supreme-Court language out of this, and all the other circuits other than the Seventh Circuit and the First Circuit in a case that's not directly on point, but the Seventh Circuit and the First Circuit have agreed with the government's position that it reads the assert language out and thus doesn't create a timely right to bring these sorts of petitions. I want to turn briefly to the Teague analysis. Much has been made of Teague in the briefing. Russo, again, the Eighth Circuit case, talks about why the Teague analysis shouldn't apply, talks about why Teague, even if this Court went through the Teague analysis, why it doesn't create this new rule. We argued this in our brief as well, and it's worth noting that opposing counsel here, by relying on the Teague analysis, is starting on Step 5, and the government's position is we can't even get past Step 1, that there's not this rule that's been announced, and thus if there's no rule, how could there be a new rule? And for that reason, the Teague analysis shouldn't apply. This Court shouldn't become the first court in the country to go through the Teague analysis and to have this be a new rule that applies to the mandatory guidelines. If there's no further questions on the timeliness issue, I want to talk very briefly about the crime of violence issue. I'll note that this Court does not need to decide the crime of violence issue, that the timeliness issue here controls, but because COA was granted broadly, I'd like to talk about the crime of violence issue very briefly here. The crime at issue in this case is Louisiana illegal use of a weapon. That crime punishes the use of a weapon that will foreseeably, the volitional use, the use of a weapon that will foreseeably result in death or great bodily harm to another person. Not just some harm, not just damage to property, but specifically and unambiguously in the statute, death or great bodily harm to another person. After Reyes-Contreras, the result is that that is a crime of violence. That has to be a crime of violence. If there's no questions about the crime of violence and no further questions, I'd ask that this Court affirm the denial of Mr. Lennon's 2255. Thank you. Very quickly, I want to note that the COA was not only granted on the timeliness issue. We asked for, in our COA motion, a COA both on that initial threshold question and the merits, and that motion was granted in full. It didn't comply with the requirements that the issues be delineated specifically, but that's not jurisdictional, and I think we should presume if the motion was granted, it was granted in full. I next want to note that the government is saying that we shouldn't be engaging in Teague analysis, but the government's argument is that this does not fall within the scope of Johnson's rule, and we need a new rule. That is Teague analysis. The government can't just assert that this is not within the scope of the rule and then refuse to examine the case law which determines the scope of rules when something is and isn't a new rule. And so what we know, especially from Stringer, is that you can't just say that this was a different statute, and therefore that's not the rule. That's a different rule. Stringer expressly said that's incorrect. Stringer said we don't need a new rule if the statutes are the same. And so what we know from all of this Teague case law is that the question is not the holding, it's the principles compelling the holding. And that's what Morgan says as well. We are looking at the principles. So if there's a factual distinction of some kind, if there's some kind of distinction, that's not fatal. The question is whether it's meaningful. And Justice O'Connor said this, and right, the question is whether the identified distinction is meaningful to application of the rule. And Stringer illustrates this. Mississippi's death penalty statute was structurally different from Georgia than Oklahoma's, which had already been struck down. It had the same capital sentencing aggravating factor, but it was a weighing statute. It wasn't the sort of one-off single aggravating factor system. And kind of like here, Mississippi said, well, we can't possibly know whether Godfrey, which invalidated Georgia's statute, applies equally to Mississippi's situation because it's different. Those are different things. Just like the government's saying here, well, that's a statute. These are guidelines. But the Supreme Court said that doesn't ---- That's different in this case, though, isn't it? I mean, a new rule is a new rule, and if you have to have a case to declare it a new rule, then it seems that it's undeniable that you have a new rule. Well, I don't think that we do need a new case because what Stringer said is that you can look at past precedent. You can look at existing principles in the law. What does a new rule mean? The new rule means if you ---- So its application of existing principles to a new situation is not a new rule. And it doesn't matter if the Supreme Court has not expressly held on this precise question. What does ---- I mean, at what point does the analysis of fact become so involved in the announcement of the association of the appeal with the new rule that the second rule becomes also a new rule? Where do you draw the lines in that? Well, first of all, I think we're sort of being hemmed in a corner where we shouldn't be doing this analysis at all because the analysis of your speech, did he assert Johnson, and then does Johnson entitle him to relief? But having said that, I think that Stringer shows us that line. They say, look at what we've said in past cases about weighing statutes, about sentencing broadly, and based on that, do those principles tell us if there's anything inhibiting application of the rule we announced in Godfrey? And if I'm reading the government's brief correctly, and I think that this is what Mr. McLaren just said, he's just resting on the idea that ACCA ---- that Johnson only involved ACCA. But that's not enough. You have to look at whether that distinction is meaningful. And we know from existing case law and from Johnson itself that it's not.  Well, that ---- I'm only using Justice O'Connor's words. So I think the way you apply that is you look ---- I'm kind of imprecise. Her words are often imprecise. Of course, and I think that this analysis is hard, which I also think should be a signal we shouldn't be doing this at the F3 stage, that there's no reason to be doing this sort of complex, confusing analysis in what is supposed to be a straightforward, run-of-the-mill statute of limitations. But if ---- I mean, the other is it's straightforward. New means new. It is not straightforward when new may mean not new, just sort of new, or really not quite new at all. I agree it's a difficult standard to apply. But what we know from the case law is that new rule definitely doesn't mean that it's just a little bit different than the other holding. We definitely know that. So what we have to do is look at case law that existed prior to Johnson. And I think even Beckles coming out after Johnson helps. It gives context. It helps us understand the principles in Johnson. Do they apply equally to the mandatory guidelines? Is there anything actually inhibiting application? And we know for sure that there's not anything inhibiting, that the mandatory guidelines residual clause suffered from the same exact flaws and that they function in the same exact way. In fact, Booker went so far as to say ---- may I finish my sentence? Go ahead. That there is no constitutional distinction between mandatory guidelines and statutes like ACCA. And I think that that ends the inquiry. So if someone today filed a 2255 raising the same issue as your client, you would say that's out of time? Because all these years have passed now since Johnson. Yes. I think Johnson is the new rule. I think that there has been no rule. I think that everything else has been simple application of Johnson in the Supreme Court's own words. All right. Thank you, counsel, on both sides for this good argument. The last case, DeGioia v. Magra Petroleum.